UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JORDAN, | CASE NO.   1:07-cv-202-OWW-MJS (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION THAT MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| R. CHAPNICK, | (ECF No. 46) |
| Defendant. | OBJECTIONS DUE 3/1/2011 |
| / | |

Plaintiff James Jordan ("Plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  The only Defendant remaining in this action is R. Chapnick, the former Chief Medical Officer at Pleasant Valley State Prison ("PVSP").

Before the Court is Defendant Chapnick's Motion for Summary Judgment.[1]  (ECF No. 46.) Plaintiff has filed an Opposition to the Motion, and Defendant has filed a Reply. (ECF Nos. 57 & 70.)  The Motion is now ready for ruling.

**I.   LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be

---

[1] Also pending before the Court are Plaintiff's Motion and Amended Motion asking the Court for a 30-day leave to allow Plaintiff additional time to complete discovery.  (ECF Nos. 33 & 34.)  These motions were both filed on April 14, 2010.  Because discovery has long since closed, and the neither party had difficulty presenting the evidence needed to support their dispositive motions and responses, the Court deems Plaintiffs' Motions moot.

entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**II.   FACTS**

The relevant facts[2], viewed in the light most favorable to the Plaintiff, are as follows.

In 1987, while in the custody of the California Department of Corrections ("CDCR"), Plaintiff underwent surgical implantation of an intra-ocular lens in his right eye. Plaintiff was transferred to PVSP in late 2003. (Pl.'s Decl., ECF No. 64, ¶ 15.) In August 2005,

---

[2] Both parties have included a variety of facts in their papers that the Court deems irrelevant to this stage of the proceeding. In this section, the Court has chosen to include only those facts necessary to resolution of the instant Motion.

-2-

1 Defendant Robert Chapnick was appointed Chief Medical Officer at PVSP and held that
2 position during the time period relevant to this action. (Def.'s Decl., ECF No. 46-7, ¶ 1.)
3       On September 9, 2005, Plaintiff filed a CDC 1824, ADA Reasonable Modification
4 or Accommodation Request ("ADA Request"), stating that he had "severe eye pain" due
5 to decay and disease in his eyes. (ADA Request, ECF No. 46-8, p. 2.) He stated that he
6 had not received any treatment or medication and wanted a second opinion regarding his
7 eye condition .
8       In response to the ADA Request, Dr. I. Choo examined Plaintiff.  Dr. Choo found
9 that Plaintiff's medical concerns were "valid", diagnosed Plaintiff with a "displaced
10 intraocular lens," and prescribed 800 mg ibuprofen for "pain management." (ADA Request
11 at 5.) Dr. Choo also referred Plaintiff to optometry for examination and recommended that,
12 following examination, Plaintiff be referred to ophthalmology for further medical treatment.
13 (Id.)
14       On November 19, 2005, Plaintiff was seen by an optometrist[3] who confirmed
15 Plaintiff's diagnosis but did not refer Plaintiff to ophthalmology. (ECF No. 46-8 at 42.) He
16 recommended only glasses.  (Id.)
17       When Plaintiff was not referred to ophthalmology,[4] he filed his second level appeal
18 ("Appeal") on November 25, 2005.  In it, he asked to be seen by ophthalmology and stated
19 that his pain medication prescription was set to expire on January 17, 2006. (ECF No. 65
20 at 91.)  His ADA Request was attached to his appeal.
21       On December 28, 2005, Plaintiff's Appeal was assigned to Defendant Chapnick with
22 a note that a response was due January 11, 2006. (ECF No. 65 at 91.) On January 17,
23 2006, Plaintiff's prescription for pain medication expired. (Pl.'s Decl. ¶ 28.)  Defendant
24 Chapnick responded to Plaintiff's Appeal on February 23, 2006. (ECF No. 65 at 89.)

---

[3] The optometrist's name has not been provided by either party, and his signature on Plaintiff's medical records is illegible.

[4] Plaintiff filed a separate 602 related to comments made to him by the optometrist during evaluation.  There is no evidence that Defendant Chapnick was involved in or even aware of the subject of this second 602.  Because Defendant Chapnick is liable only for actions personally attributable to him, this second 602 is irrelevant to the present action.

Plaintiff received Defendant Chapnick's response on March 11, 2006.  (Id. at 89.) Plaintiff's prescription for pain medication was finally renewed on March 19, 2006.[5]  (Id. at 86.)

## III. ANALYSIS

Defendant Chapnick moves for summary judgment arguing that Plaintiff has not shown a genuine dispute as to whether Chapnick violated Plaintiff's constitutional rights. Defendant Chapnick also argues that, even if such violation had occurred, he is entitled to qualified immunity.  The Court will address each argument in turn below.

### A. Deliberate Indifference

Plaintiff's claim against Defendant Chapnick arises from the alleged violation of Plaintiff's rights under the Eighth Amendment of the United States Constitution.  "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id. (citing McGuckin, 974

---

[5] Defendant contends that Plaintiff's pain medication was renewed on February 14, 2006 and points to medical records of that date stating that "motrin renewal will be submitted."  (Def.'s Decl. ¶ 10; ECF No. 46-8 at 24.)  However, Plaintiff has submitted evidence that his pain prescription was not renewed until March 19, 2006.  (Pl.'s Decl. ¶ 28; ECF No. 65 at 86.)  Because the Court must here view the facts in the light most favorable to Plaintiff, it accepts, for purposes of this Order, Plaintiff's contention that his pain medication lapsed between January 17, 2006 and March 19, 2006.

-4-

F.2d at 1060 (internal quotations omitted)). Where the claim involves a delay in the receipt of treatment or care, the claim is not cognizable unless the delay led to further harm. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff argues that Defendant is liable for the constitutionally deficient medical care he received because Chapnick was "the boss" and was responsible for ensuring that Plaintiff received adequate medical care. (Pl.'s Dep.[6], ECF No. 46-4, pp. 41, 61.) It is undisputed that Defendant Chapnick was the Chief Medical Officer at PVSP and that, in that capacity, he oversaw the medical services provided at the prison. However, under section 1983, there is no *respondeat superior* liability, Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (2009). A plaintiff is required to prove that the defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Thus, the fact that Chapnick was Chief Medical Officer alone cannot serve as the basis for liability in this case. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Taylor v. Evans, 2008 WL 4369758, *2 (N.D. Cal. Sept. 23, 2008) ("The mere fact that the [Chief Medical Officer] is in charge of the medical department is not enough to make [him] liable on plaintiff's claim."). To survive summary judgment, Plaintiff must establish that Defendant Chapnick personally participated in denying Plaintiff adequate medical care. Jones, 297 F.3d at 934.

Plaintiff argues that Defendat Chapnick intentionally interfered with Plaintiff's referral to an ophthalmologist and that this act constituted deliberate indifference. (Pl.'s Opp. at 15.) However, the record shows that it was the optometrist who failed to refer Plaintiff to ophthalmology. (ECF No. 46-8 at 42-43.) There is no evidence that Defendant Chapnick was personally involved with that decision. Without that involvement, Defendant Chapnick

---

[6] Plaintiff has filed a Request asking the Court not to consider Plaintiff's deposition transcript submitted by Defendant Chapnick in support of the instant motion. (ECF No. 69.) Plaintiff contends that the transcript from his deposition is not "impartial" because the court reporter who transcribed the deposition rode with defense counsel from Sacramento to where the deposition was held in San Jose. (Id.) The Court does not find that commuting to and from a deposition with counsel makes a court reporter biased. Further, Plaintiff has failed to identify any inconsistency between how he recalls testifying during the deposition and the final transcript. Thus, the Court sees no reason to not consider Plaintiff's deposition transcript in resolving the instant Motion.

cannot be held liable for the failure to refer Plaintiff to an ophthalmologist. See Collins v. Mendoza-Powers, 2009 WL 453060, *16 (E.D. Cal. Feb. 23, 2009) (chief medical officer not responsible for treating physician's delay in referring plaintiff to a specialist).

The only action Defendant Chapnick was personally responsible for was preparation of the response to Plaintiff's second level appeal of his ADA Request. Because Defendant can be liable only for his own actions, Plaintiff's claim survives summary judgment only if Chapnick's handling of Plaintiff's second level appeal constituted deliberate indifference.

Plaintiff argues that Defendant Chapnick was deliberately indifferent because he failed to respond to Plaintiff's second level appeal for over one hundred days. (Pl.'s Opp. at 15.) Plaintiff argues that Defendatn Chapnick's delayed response allowed Plaintiff's pain medication to be "cut off" and caused Plaintiff to suffer extreme pain. (Id.)

A prison official who delays in responding to a grievance when he is aware of a serious medical condition can be liable for an Eighth Amendment violation. See Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir. 1989) (three month delay in responding to grievance states a claim for deliberate indifference); Ashker v. Cate, 2010 WL 583965, *6-7 (N.D. Cal. Feb. 16, 2010) (plaintiff stated a claim against chief medical officer that delayed in responding to grievance for three months).

The Court finds that Plaintiff has presented evidence from which it can reasonably be inferred that, at least as of December 28, 2005—when Plaintiff's second level appeal was assigned to Defendant Chapnick—that Defendant Chapnick was aware of Plaintiff's eye condition and associated pain. Because Plaintiff had explicitly stated in his second level appeal that his pain medication prescription was about to expire, Defendant was on notice of that January 17, 2006, expiration. Defendant Chapnick has not denied such knowledge and has failed to produce any evidence explaining why he failed to respond to Plaintiff's grievance until February 23, 2006—approximately six weeks late and more than a month after Plaintiff's prescription for pain medication expired. The facts are sufficient to support a claim that Defendant Chapnick caused Plaintiff unnecessary harm, i.e., caused him to go without pain medication for nearly two months.

1    Thus, the Court finds that Plaintiff has shown a genuine dispute of material fact as
2 to whether Defendant Chapnick's delayed response to Plaintiff's grievance constituted
3 deliberate indifference.  See Hunt, 865 F.2d at 201 (three month delay in reviewing
4 grievance and providing medical care was "more than an isolated occurrence of neglect"
5 and caused the plaintiff to "suffer unnecessary and wanton infliction of pain.") The Court
6 recommends that Defendant's Motion for Summary Judgment be denied on this ground.

   **B.    Qualified Immunity**

8    Defendant Chapnick argues that, even if Plaintiff can establish a constitutional
9 violation, Defendant Chapnick is entitled to qualified immunity. (Def.'s Mot., ECF No. 46-1,
10 p. 12.)

11    Government officials enjoy qualified immunity from civil damages unless their
12 conduct violates "clearly established statutory or constitutional rights of which a reasonable
13 person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon
14 the issue of qualified immunity, the Court must determine: (1) whether the facts alleged
15 show the defendant's conduct violated a constitutional right; and (2) whether that right was
16 clearly established at the time of the violation. Pearson v. Callahan, 129 S.Ct. 808, 815
17 (2009).  As discussed above, the Court has found that there is a trial-worthy issue as to
18 whether Defendant Chapnick's delayed response to Plaintiff's second level appeal
19 constituted deliberate indifference.  However, Plaintiff's claim can proceed only if a
20 reasonable person in Defendant Chapnick's position would have known that such delay
21 was a constitutional violation. In other words, the Court must determine "whether the state
22 of the law [at the time of the challenged action] gave 'fair warning' to the officials that their
23 conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002)
24 (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)).  The inquiry "must be undertaken in
25 light of the specific context of the case, not as a broad general proposition . . . ." Saucier
26 v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must
27 have been 'clearly established' in a more particularized, and hence more relevant, sense:
28 The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

In 1989, the Ninth Circuit decided Hunt v. Dental Department, 865 F.2d 198 (9th Cir. 1989), in which the prisoner's grievance regarding dental care went unaddressed by prison officials for nearly three months. During this time, the prisoner suffered pain and lost weight because his condition affected his ability to eat. The Ninth Circuit reversed the district court's grant of summary judgment and held that the prison officials' delayed response to the prisoner's grievance, when prison officials knew of the prisoner's serious medical need, could support a finding of deliberate indifference. Id. at 201.

Hunt remains binding law in this circuit. Thus, when Plaintiff filed his second level appeal in 2005, a reasonable person would have known that it was deliberate indifference to fail to respond to Plaintiff's appeal in a timely manner when Plaintiff's pain medication had expired. Accordingly, Defendant Chapnick is not entitled to qualified immunity from Plaintiff's Eighth Amendment claim.

## IV.    **CONCLUSION AND RECOMMENDATION**

For the reasons stated above, the Court hereby ORDERS the following:

1. Plaintiff's Request (ECF No. 69) asking the Court not to consider his deposition transcript is DENIED; and

2. Plaintiff's Motion and Amended Motion seeking a stay of discovery (ECF Nos. 33 & 34) are DENIED as moot.

Additionally, the Court RECOMMENDS the following:

1. Defendant's Motion for Summary Judgment be GRANTED as to Plaintiff's claims against Defendant Chapnick arising out of Defendant Chapnick's supervisory authority and/or role as Chief Medical Officer;

2. Defendant's Motion for Summary Judgment be DENIED as to Plaintiff's claims involving Defendant Chapnick's delayed response to Plaintiff's second level appeal; and

3. The case be set for trial on the issue of whether Defendant Chapnick's

delayed response to Plaintiff's second level appeal violated Plaintiff's Eighth Amendment rights.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Not later than March 1, 2011, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Y1st</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: February 14, 2011         /s/ *Michael J. Seng*
ci4d6                                        UNITED STATES MAGISTRATE JUDGE